IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TRACY L. GIFFORD,

                         Plaintiff,

        v.

PHH MORTGAGE CORPORATION, d/b/a
COLDWELL BANKER MORTGAGE,

                         Defendant.

OPINION AND ORDER

18-cv-260-slc

        Plaintiff Tracy Gifford alleges that her mortgage lender, defendant PHH Mortgage Corporation, failed to provide a good faith estimate of the property taxes on the home she purchased and escrowed approximately $2,000 less than it should have to pay her first property tax bill.  Gifford contends that because she was under the assumption that the escrow account would cover the entire amount that she owed for taxes, she did not make any further payment and was placed in delinquent status.  To account for the discrepancy, PHH increased her monthly mortgage payment by about $400 for two months and $168.38 thereafter, placing Gifford in financial hardship.  Accordingly, Gifford filed suit in the Buffalo County Circuit Court on March 8, 2018, bringing claims for monetary relief against PHH for misrepresentation (intentional, negligent and strict liability) under Wisconsin law and violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, and the Wisconsin Deceptive Trade Practices Act (DTPA), Wis. Stat. § 100.18.  PHH removed the case to this court on April 13, 2018.  Dkt. 1.

        Before the court is defendant PHH's motion to dismiss Gifford's amended complaint on the grounds that:  (1) Gifford's TILA claim is barred by the applicable statute of limitations; (2) Gifford's state law misrepresentation claims are barred by the economic loss doctrine; (3) Gifford cannot state a claim under Wis. Stat. § 100.18 because that statute does not apply to the

parties' lending relationship; and (4) Gifford cannot state a misrepresentation or § 100.18 claim because an escrow estimate is not a representation of fact. As explained below, plaintiff's claims are weak, but I am declining to dismiss them at the front end of the lawsuit because a few additional facts need to be adduced.

I have drawn the following facts from Gifford's amended complaint (dkt. 9) and I assume these facts to be true for the purpose of deciding PHH's motion to dismiss. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

## ALLEGATIONS OF FACT

Plaintiff Tracy Gifford resides in Mondovi, Wisconsin. Defendant PHH Mortgage Corporation, which does business as Coldwell Banker Mortgage, has its principal place of business in Mt. Laurel, New Jersey.

On March 25, 2015, plaintiff received a mortgage loan from PHH to purchase the house where she currently resides. In order to afford the house, Gifford needed her monthly payment to be about $700. PHH told her that her monthly payment would be $709.38, and Gifford relied on that disclosure in deciding to take out the mortgage loan and purchase the house.

PHH estimated that the amount of property taxes on Gifford's new property would be $1,140.72, or $95.06 per month. However, Gifford's actual property taxes in the first year of ownership were $3,188.30, which is $2,047.58 more than---and almost triple---PHH's estimate. PHH did not disclose to Gifford that the amount being escrowed for the property taxes would not cover the entire property tax bill, leading Gifford to believe that $1,140.72 was the entire amount owed in property taxes and that the escrow would cover it. As a result, Gifford failed to pay her entire property tax bill for that year.

To remedy the shortfall, on February 1, 2017, PHH increased Gifford's monthly payment to $1,116.40, or $407.02 more than her original payment. On April 1, 2018, PHH reduced the payments to $877.76, which is $168.38 higher than her original monthly payment of $709.38, about a 24% increase. Gifford now struggles to make her monthly payments and her other expenses. Gifford contends that PHH knew or should have known that the amount being escrowed was not enough to cover the entire amount of her property taxes.

**OPINION**

**I. Rule 12(b)(6): Its Availability to PHH and Its Requirements**

Gifford contends that the court cannot consider PHH's motion under Fed. R. Civ. P. 12(b)(6) because PHH already filed an answer to Gifford's original complaint, which Gifford says is essentially identical to the amended complaint. In support, Gifford cites *Loud Records LLC v. Minervini*, 621 F. Supp. 2d 672, 675 (W.D. Wis. 2009), in which Judge Crabb construed defendant's motion to dismiss under Rule 12(b)(6) as a motion for judgment on the pleadings under Rule 12(c) because defendant had filed his motion long after he answered the complaint. Gifford's argument and reliance on *Loud* is misplaced. "[I]t is well established that the amended pleading supersedes the original pleading," and that once amended "the original pleading no longer performs any function in the case." *Wellness Community-National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) (internal quotation marks and citation omitted). Therefore, PHH correctly brings its motion under Rule 12(b)(6).

A Rule 12(b)(6) motion "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761

4

F.3d 732, 736 (7th Cir. 2014).  In deciding a motion under Rule 12(b)(6), the court views the complaint in the light most favorable to the non-movant, accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the non-movant's favor.  *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

A claim survives a Rule 12(b)(6) challenge when it "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This means that "the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief."  *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

## II.  Analysis of Plaintiff's Claims

PHH challenges each of Gifford's claims, arguing that her TILA claims are barred by the applicable statute of limitations, her misrepresentation claims are barred by the economic loss doctrine, her § 100.18 claims fail to allege a public representation, and alternatively, her misrepresentation and § 100.18 claims fail to allege the necessary element of a misrepresentation of fact.  I will address each challenge separately:

## A. Statute of Limitations

PHH challenges Gifford's TILA claim as untimely. Gifford contends that PHH waived its statute of limitations argument by not pleading it as an affirmative defense in its answer to the original complaint. Gifford is incorrect. The fact that PHH did not raise an affirmative defense in its answer to Gifford's original complaint is irrelevant because the amended complaint now is the operative pleading in this case. PHH appropriately raised the statue of limitations defense at its first opportunity after Gifford filed her amended complaint. *See Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (finding same). "Because a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (citations omitted). In addition, the court of appeals "has specifically held that defendants do not waive an affirmative defense by failing to raise it in their answer so long as they assert the affirmative defense in a subsequent motion to dismiss." *Id.* at 735, n.5 (citing *Blaney v. United States*, 34 F.3d 509, 512 (7th Cir. 1994)).

The crux of the parties' substantive dispute regarding timeliness is whether Gifford's TILA claim is subject to a one-year or a three-year statute of limitations period under 15 U.S.C. § 1640(e), which states:

> Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation or, in the case of a violation involving a private education loan (as that term is defined in section 1650(a) of this title), 1 year from the date on which the first regular payment of principal is due under the loan. Any action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the

occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

PHH relies on the first sentence of this provision to support its contention that a one-year limitations period applies. Gifford relies on the three-year statute of limitations period provided for in the second sentence, arguing that § 1639(b)(1) (regarding timing of certain disclosures) and §1639c (regarding minimum standards for residential loans) are "relevant" to her lawsuit. In particular, Gifford contends that PHH violated 12 C.F.R. § 1026.19(e)(3)(iii), which is a regulation promulgated pursuant to § 1639c(b)(3)(A) (allowing Consumer Financial Protection Bureau to prescribe regulations to carry out § 1639c). The version of the regulation in effect at the time Gifford sought financing provides:[1]

(3) Good faith determination for estimates of closing costs.

*   *   *

(iii) Variations permitted for certain charges. An estimate of the following charges is in good faith if it is consistent with the best information reasonably available to the creditor at the time it is disclosed, regardless of whether the amount paid by the consumer exceeds the amount disclosed under paragraph (e)(1)(i) of this section:

*   *   *

---

[1] Gifford contends in her response brief that "[t]he regulation at issue herein was published in 2013 under the title '2013 Integrated Mortgage Disclosures Rule Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z).' *See e.g.*, 78 Fed. Reg. 79730." Dkt. 16 at 6. However, a review of 78 Fed. Reg. 79730 reveals that, notwithstanding its reference to "2013" in its title, this particular rule became effective on August 1, 2015, after Gifford applied for and received financing. This seems to have little effect on Gifford's argument because it appears that PHH was required to provide Gifford with a good faith estimate of her escrow amount even at the time she applied for her mortgage.

(C) Amounts placed into an escrow, impound, reserve, or similar account;

(D) Charges paid to third-party service providers selected by the consumer consistent with paragraph (e)(1)(vi)(A) of this section that are not on the list provided pursuant to paragraph (e)(1)(vi)(C) of this section; and

(E) Charges paid for third-party services not required by the creditor. These charges may be paid to affiliates of the creditor.

12 C.F.R. § 1026.19 (Dec. 30, 2011 to Oct. 2, 2015 version)

In its reply, PHH clarifies that because Gifford seeks only monetary damages and not rescission, the damages provision in 15 U.S.C. § 1640(a) applies:

[I]n the case of a failure to comply with any requirement under section 1639 of this title, paragraph (1) or (2) of section 1639b(c) of this title, or section 1639c(a) of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material.

§ 1640(a)(4).

In *Fendon v. Bank of Am., N.A.*, 877 F.3d 714 (7th Cir. 2017), the court noted that after this statutory authorization of damages, "[t]he first sentence of § 1640(e) then sets a one-year period of limitations for any claim under § 1640 as a whole." *Id.* at 716. However, the court *also* noted that the second and later sentences of § 1640(e) "provide some exceptions" [for violations of §§ 1639, 1639b, and 1639c]. *Id.* Gifford alleges that these excepted sections govern her claims.

PHH acknowledges that there are exceptions to the one-year statute of limitations period for actions enforcing violations of §§ 1639, 1639b, and 1639c, but it faults Gifford for not

invoking any of these particular sections until her response brief, in which she cites the general disclosure requirements of § 1639c, a regulation that purportedly corresponds to those requirements and the grant of regulatory authority in § 1639c(b)(3)(A). *See* dkt. 16 at 5.

Contrary to PHH's suggestion, Gifford was not required to identify in her complaint the specific statutory or regulatory provisions that PHH allegedly violated. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery."); *see also Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error."). PHH, however, correctly points out that Gifford has failed to cite any case law in support of her pronouncement that § 1639c governs her particular claim and that § 1639c is the enabling legislation for 12 C.F.R. § 1026.19(e)(3)(iii). To the same effect, although Gifford states in her response that she "would raise" an equitable tolling defense if the court determines that the one-year statute of limitations period applies in her case, nothing in her amended complaint or her response contain facts related to her due diligence in bringing her claims or that extraordinary circumstances beyond her control that prevented her from timely bringing her claims. *See Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 964 (7th Cir. 2005) ("Equitable tolling is a doctrine used sparingly, reserved for those situations in which extraordinary circumstances prevent a party from filing on time.").

PHH cites a case from the Northern District of Georgia with similar facts to the instant case in which the court held:

> For residential mortgage transactions, TILA requires creditors to disclose, among other things, the amount of "estimated taxes" for the mortgaged property in the initial year of the loan and the "estimated monthly amount" to be escrowed for such taxes. §

> 1639d(h)(3)-(4); *see also* 12 C.F.R. § 226.18(s)(3)(i)(C) (requiring disclosure of "an estimate of the amount of taxes" payable from each monthly payment to the escrow account). Generally, a private civil action for violation of TILA's disclosure requirements must be brought within one year of the alleged violation. 15 U.S.C. § 1640(e).
>
> *Clarke v. Fid. Bank*, 2015 WL 11549240, at *2 (N.D. Ga. June 4, 2015), rep. and rec. adopt. in part and rej. in part, 2015 WL 11605377 (N.D. Ga. June 30, 2015).

Although the court in *Clarke* did not expressly say so (because it had no need to say so), the provision allowing for a three-year statute of limitations period for certain violations does not apply to violations of § 1639d, meaning the general one-year statute of limitations period in § 1640(e) applies without the possibility of exceptions.

At this early stage, and without further information about which specific provisions of the TILA actually govern Gifford's claim, I cannot determine whether her claim is subject to a one-year or a three-year statute of limitations. Therefore, I will deny this aspect of PHH's motion to dismiss Gifford's TILA claims. *See Tregenza v. Great American Communications Co.*, 12 F.3d 717, 719 (7th Cir. 1993) ("The statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in his complaint."); *see also Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014) (reaffirming holding in *Tregenza*).

## III. Economic Loss Doctrine

PHH argues that all of Gifford's misrepresentation claims are barred by the economic loss doctrine, which is "a judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses

associated with the contract relationship." *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 23, 270 Wis.2d 146, 677 N.W.2d 233. The general idea behind the doctrine is straightforward and uncontroversial: it bars dissatisfied buyers from using tort law to recover losses that were or should have been protected against through contract law. *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 35, 262 Wis.2d 32, 662 N.W.2d 652.

The Wisconsin Supreme Court first applied the economic loss doctrine in the context of products liability cases that did not involve personal injury or damage to property apart from the product itself. *E.g., Sunnyslope Grading, Inc. v. Miller, Bradford and Risberg, Inc.*, 148 Wis.2d 910, 916, 437 N.W.2d 213, 215 (1989) (doctrine precludes recovery in tort for economic losses resulting from failure of product to live up to contracting party's expectations). Over the years, the Wisconsin Supreme Court (the Court) has expanded the doctrine to cover many other areas and a broad array of relationships, both commercial and noncommercial. *Zimmerman v. Logemann*, 2009 WL 4407205, at *7-8 (W.D. Wis. Nov. 30, 2009). In doing so, the Court has struggled to delineate the boundaries of the doctrine, often issuing closely divided or fractured opinions. *Id.* (summarizing cases). For example, as PHH points out, the Court has found that the doctrine applies to common-law claims for misrepresentation that occur in the context of residential, or noncommercial, real estate transactions,[2] *Below v. Norton*, 2008 WI 77, ¶ 23, 310 Wis. 2d 713, 727, 751 N.W.2d 351, 358 (involving misrepresentation about broken sewer line in sale of house), and the Court assumed that the doctrine could apply to cases involving "a

---

[2] That said, since 2009, Wis. Stat. § 895.10 has provided that a transferee in a residential real estate transaction may bring a tort claim for *intentional* misrepresentation by the transferor.

contract to lend money," *Wickenhauser v. Lehtinen*, 2007 WI 82, ¶¶ 39-41, 302 Wis. 2d 41, 734 N.W.2d 855.

However, as Gifford points out, Wisconsin has not extended the economic loss doctrine to cover contracts for services. *Ins. Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI 139, ¶ 52, 276 Wis. 2d 361, 381, 688 N.W.2d 462, 472. Where a contract is for a mixture of products and services, then courts apply the "predominant purpose test" to determine if a contract is for products or services. *Kalahari Dev., LLC v. Iconica, Inc.*, 2012 WI App 34, ¶23, 340 Wis. 2d 454, 811 N.W.2d 825. If the contract is predominantly one for a service, then the economic loss doctrine does not bar a tort claim. *Id.* Gifford proclaims, without citing any supporting legal authority, that her mortgage was primarily a contract for a service.

For its part, PHH notes that in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), the Seventh Circuit recognized that the economic loss doctrine bars negligent misrepresentation claims stemming from a mortgage relationship, more particularly, the terms of a loan modification. But as Gifford notes, *Wigod* involved the application of Illinois state law and did not discuss the distinction between contracts for products and contracts for services. Even so, the court's reasoning is somewhat instructive: Any duty Wells Fargo may have had to provide accurate information to Wigod arose directly from their commercial and contractual relationship, and any disclosure duties owed were contractual, and therefore did not sound in the torts of negligence. *Id.*

In *Zimmerman*, 2009 WL 4407205 (an opinion that I wrote), this court considered whether the economic loss doctrine barred the Zimmermans' claims that they were duped into accepting a home loan that they could not afford by their mortgage broker, appraiser, and lenders, who falsified their financial information and inflated the appraisal of their property.

Although the Zimmermans did not argue that their mortgage loan contract was primarily one for services, I noted in *dicta* that there would be little support for such an argument. *Id.* at *8 (citing *National Operating, L.P. v. Mutual Life Ins. Co. of New York*, 2001 WI 87, ¶¶ 50-51, 244 Wis.2d 839, 863, 630 N.W.2d 116, 128 (mortgage loans are security agreements subject to Article 9 of UCC); *Spencer v. DHI Mortgage Co., Ltd.*, 2009 WL 1930161, *3 (E.D. Cal. 2009) (applying economic loss doctrine to dispute about loan); *Hunter v. Sterling Bank*, 588 F. Supp. 2d 645, 651-52 (E.D. Pa. 2008) (assuming that economic loss doctrine applies to loan contracts)). Six years later, Magistrate Judge Joseph in the Eastern District of Wisconsin applied the economic loss doctrine to a claim by consumer borrowers against their lender for negligence in processing a loan modification, reasoning that

> The processing of the paperwork for a loan modification is a necessary step to obtaining the modified product—the mortgage loan. Just as the lender's processing of paperwork so that the borrower can receive a mortgage in the first instance does not transform the mortgage contract into a contract for services, the bank's processing of paperwork in relation to the loan modification does not transform it into a contract for services. Thus, I do not find that the alleged contract to modify the mortgage loan was a contract for services.

*Srok v. Bank of Am.*, 2015 WL 6828078, *7 (E.D. Wis. Nov. 6, 2015).

More recently, the Bankruptcy Court for the Eastern District of Wisconsin disagreed with the holding in *Srok* and found that the debtors' mortgage lending contract with their bank was not a contract for a product. *In re POC Properties, LLC*, 580 B.R. 504, 511-12 (Bankr. E.D. Wis. 2017) (involving bank's statements about renewing debtors' loan). It held that either because the debtors' tort claims of misrepresentation and bad faith "involve[] a services contract that would not be subject to Wisconsin's economic loss doctrine, or because the policy behind the

doctrine does not appear to apply to this situation, the Debtors' claims in this case are not limited by the economic loss doctrine." *Id.* at 512.

"In order to determine whether a given contract between two parties is one for services or products, a court is to apply the 'predominant purpose' test by considering objective and subjective factors such as 'the amount charged for services and the amount charged for materials, whether the purpose or 'thrust' of the contract was for goods or for services and the language used in the contract to describe the project.'" *Trinity Lutheran Church v. Dorschner Excavating, Inc.*, 2006 WI App 22, ¶ 22, 289 Wis. 2d 252, 266, 710 N.W.2d 680, 687 (quoting *Linden v. Cascade Stone Co., Inc.*, 2005 WI 113, ¶ 20, 283 Wis. 2d 606, 620, 699 N.W.2d 189, 196) (involving contract for home remodeling). "The predominant purpose test is a 'totality of the circumstances' test." *Id.*

Gifford has failed to discuss any of the factors relevant to determining whether her mortgage lending contract was one for a service versus a product. Citing *Srok*, PHH argues that its escrow disclosures were part of the processing paperwork to provide Gifford with a product: her loan. However, even if this is true, the source of Gifford's harm resulted from an escrow estimate that PHH provided for Gifford's property taxes. Although the escrow amount factors into Gifford's monthly payment, PHH has not shown that it is part of the loan itself. Arguably, escrow could be considered a service that PHH provides. The money paid into escrow is a separate payment that is part of Gifford's monthly payment but it is not part of her mortgage loan, which is the product in this case.

That said, Wisconsin has adopted the Uniform Commercial Code (UCC), Wis. Stat. Ch. 401 to 420, which governs mortgage loans. *See National Operating*, 2001 WI 87, ¶¶ 29-49. With

respect to goods subject to the UCC and the economic loss doctrine, the Wisconsin Supreme

Court has explained that

> Wisconsin has recognized the superior ability of contract law, and in particular the Uniform Commercial Code (UCC), to deal with certain kinds of disputes. *Cease Elec.*, 276 Wis. 2d 361, ¶ 33, 688 N.W.2d 462. In *Cease Electric*, however, we declined to apply the economic loss doctrine to contracts for services. *Id.*, ¶ 2. Central to our decision was the fact that no body of law similar to the UCC applies to contracts for services. We recognized that the UCC provides a "comprehensive system for compensating consumers for economic loss arising from the purchase of defective products." *Id.*, ¶ 28 (citing *State Farm*, 225 Wis. 2d at 342, 592 N.W.2d 201.) When a product proves to be defective, the UCC allows the aggrieved buyer to sue for breach of warranty or (under certain circumstances) to return the goods and sue for breach of contract. *Id.*, ¶ 29. *See also* Wis. Stat. §§ 402.313 (express warranties), 402.314, 402.315 (implied warranties), 402.602 (rejection), 402. 608 (revoking acceptance).

> *Grams v. Milk Prod., Inc.*, 2005 WI 112, ¶ 15, 283 Wis. 2d 511, 520-21, 699 N.W.2d 167, 171-72.

In sum, because it is at least *plausible* that Gifford could show that the service contract

exception to the economic loss doctrine applies in this case, I am denying PHH's front-end

motion to dismiss Gifford's misrepresentation claims as barred by the economic loss doctrine.

We likely will revisit this issue once the record has been developed further.


## IV. Public Representation

 A party violates the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18,

when it makes a false representation to "the public" with the intent to induce an obligation and

causes a pecuniary loss to the plaintiff. *Novell v. Migliaccio*, 2008 WI 44, ¶ 49, 309 Wis.2d 132,

749 N.W.2d 544. PHH contends that its alleged misrepresentation about the amount of

Gifford's escrow was not directed at a member of "the public" as that term has been construed by Wisconsin courts. A plaintiff is a member of the public under Wisconsin law unless it has a "particular relationship" with the defendant. *State v. Automatic Merchandisers of America, Inc.*, 64 Wis. 2d 659, 664, 221 N.W.2d 683 (1974). The only instance in which the Wisconsin courts have found a "particular relationship" was when the parties had entered into a contract that pre-dated the alleged misrepresentation at issue in the case. *Kailin v. Armstrong*, 252 Wis. 2d 676, 709-10, 643 N.W.2d 132 (Wis. App. 2002); *see also Uniek, Inc. v. Dollar General Corp.*, 474 F. Supp. 2d 1034, 1039-40 (W.D. Wis. 2007) (finding particular relationship in light of parties' thirteen year relationship under a "letter of understanding"). PHH contends that it had a "particular and ongoing relationship" with Gifford because the parties exchanged disclosures relating to the lending relationship. However, PHH's escrow estimate was made at the outset of the parties' contractual relationship, before the mortgage contract was finalized, and arguably was intended to induce Gifford to agree to the loan amount and mortgage terms. Therefore, drawing all reasonable inferences in Gifford's favor, I find that Gifford has alleged facts sufficient to suggest that she was a member of the public at the time the alleged misrepresentation was made. *See Epic Sys. Corp. v. Attachmate Corp.*, 2016 WL 3461596, at *9 (W.D. Wis. June 21, 2016) (finding genuine dispute issue of fact as to whether software licensee was member of public).

## V. Factual Representation

In an additional challenge to Gifford's state law claims, PHH contends that because Gifford bases her claims on PHH's escrow *estimate*, she has not alleged a representation of *fact*

necessary to state a prima facie claim for misrepresentation or deceptive trade practices. PHH

argues that two different federal courts have dismissed misrepresentation claims on this ground.

*See Kirby v. Bank of Am.*, N.A., 2012 WL 1067944, at *10 (S.D. Miss. Mar. 29, 2012) ("This

Court agrees that the Defendants clearly disclosed that the tax escrow amount was an estimate

and thus it was not a misrepresentation."); *Abel–Malak v. JP Morgan Chase Bank, N.A.*, 748 F.

Supp. 2d 505, 514 (D. Md. 2010) (holding that an escrow estimate during a real estate

settlement was not false as a matter of law because it was explicitly deemed an estimate).

However, I do not have sufficient information to make that determination at this stage in the

case. In both *Kirby* and *Abdel-Malak*, the courts had more factual information about the

circumstances surrounding the representations at issue. For example, in ruling on defendant's

motion for summary judgment, the district court in *Kirby* reviewed the HUD-1 form on which

plaintiffs based their misrepresentation claims and determined that "HUD-1 is simply a list of

all the relevant charges related to the loan transaction and necessarily restates numbers that are

derived from other features of the loan agreement." 2012 WL 1067944, at *10. Similarly, the

court in *Abdel-Malak*, was able to determine from evidence presented by the parties in

conjunction with a motion for a preliminary injunction that "[p]laintiffs were aware that their

escrow payment obligations were estimates which were subject to change," and "the escrow

payments in [defendant's] statements were explicitly deemed 'estimates.'" 748 F. Supp. 2d at

514.

In sum, I agree with PHH that it seems unlikely that Gifford will be able to show that

an "estimate" provided to her by her lender was a factual representation. *See Tietjen v. Ninneman*,

2017 WL 5634878, at *5 (E.D. Wis. Sept. 29, 2017) (finding that plaintiff had not alleged

misrepresentation of fact about pension where Pension Estimate Form made clear that figure used was estimate). However, because it is not yet clear how PHH represented the escrow amount to Gifford, it is not possible for the court to determine that the escrow amount can be expressly deemed an estimate.


ORDER

IT IS ORDERED THAT defendant PHH Mortgage Corporation's motion to dismiss the complaint under F. R. Civ. P. 12(b)(6) is DENIED.

Entered this 19th day of November, 2018.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge